**Clyde J. CROUSER and Dorothy J. Crouser, Plaintiffs-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

No. 80–1420.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1981.

Decided Dec. 18, 1981.

Robert L. McCarty, Zanesville, Ohio, for plaintiffs-appellants.

Stephen Gray, Gilbert E. Andrews, M. Carr Ferguson, Tax Division, U. S. Dept. of Justice, Washington, D. C., N. Jerold Cohen, Chief Counsel, Internal Revenue Service, Washington, D. C., for defendant-appellee.

Before KEITH and BROWN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

In 1975 appellants Clyde and Dorothy Crouser claimed a deduction on their joint income tax return for certain payments made by Mr. Crouser to his former wife, Betty, pursuant to the terms of their 1973 Ohio divorce decree.[1] The Commissioner assessed a deficiency against the taxpayers, and they appealed this determination to the Tax Court. The Tax Court held that the payments were in satisfaction of a principal sum under § 71(c)(1) of the Internal Revenue Code of 1954 (hereinafter "the Code"), and not periodic payments under § 71(a), and that, therefore, they could not be deducted under § 215 of the Code. We affirm.

Reference is made to the opinion of the Tax Court, 73 T.C. 1113 (1980), for a more detailed statement of the facts, and for a full reproduction in relevant part of the taxpayer's divorce decree. The decree, as set forth in a judgment entry dated October 17, 1973, by the Court of Common Pleas of Muskingam County, Ohio, calls for the taxpayer, Clyde Crouser, to make weekly payments of $125 through the Clerk of the Court to his former wife, Mrs. Betty Crous-

er, and for the former wife to apply these payments to certain unpaid accounts listed in the decree. The decree requires these payments so as "to insure that the property heretofore awarded defendant [Mrs. Betty Crouser] shall be free and clear and that the debts on same be paid." 73 T.C. at 1114. There follows a list of unpaid accounts and the exact amounts due on each of them, totalling $18,939.09, although the decree itself does not state this total. The decree provides that these payments "shall continue until the accounts are paid in full, or until further order." *Id.*

In 1976 the Common Pleas Court terminated the order to make the payments, after the court had found that the accounts totalled $18,939.09 and that the taxpayer had paid that amount into the court. The taxpayer attempted to take a deduction for these payments in 1975, when his former wife did not use all of the money so received to pay off the obligations set forth in the decree.

Section 215 of the Code entitles an alimony paying husband to take a deduction for amounts includible under § 71 in the gross income of his wife.[2] Before Clyde Crouser

---

1. Mrs. Dorothy Crouser appears as an appellant by virtue of having filed a joint return with her husband. In this opinion the terms "appellant" and "taxpayer" refer to Mr. Crouser, and references to "his wife" refer to his first wife, the former Mrs. Betty Crouser, to whom he made the payments in question.

2. The relevant portions of the Code sections are:

§ 215. Alimony, etc., payments

(a) General rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

\* \* \* \* \* \*

§ 71. Alimony and separate maintenance payments

(a) General rule.—

(1) Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the

wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\* \* \* \* \* \*

(c) Principal sum paid in installments.—

(1) General rule.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) Where period for payment is more than 10 years.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for pur-

can take his deduction, he must show that the payments are "periodic payments" (includible in the wife's income, deductible by the husband under § 215) according to § 71(a)(1) and not "installment payments" on a "principal sum" (not includible in the wife's income, not deductible by the husband) under § 71(c)(1). Because the period of payment was not more than ten years under the terms of the decree, the payments do not fall within the exception in § 71(c)(2), which otherwise would permit treating payments on a principal sum as periodic payments to the extent of ten per cent of the principal sum per year.

On this appeal, the taxpayer relies primarily on an exception created by one of the Treasury Regulations, 26 C.F.R. § 1.71–1(d)(3) [3] (hereinafter "the Regulation"), which states that even if the principal sum is set forth in the decree and the payments are to be made in less than ten years, the payments may be treated as "periodic payments" if two additional conditions are met: (1) the payments are subject to the contingencies of death, remarriage or change in economic circumstances; and (2) the payments are "in the nature of alimony or an allowance for support." The Regulation permits deduction in such cases *"only if"* both conditions are met. § 1.71–1(d)(3)(i) (Emphasis added.)

### I

In order to meet the first of the Regulation's two conditions, the taxpayer must show that the decree is subject to the contingencies of death, remarriage or change in economic circumstances of either spouse. Nothing in the decree expressly provides for such contingencies. The taxpayer, however, argues that the Court of Common Pleas reserved the authority under Ohio law to modify this decree for these contingencies when it ordered that "Plaintiff's [taxpayer's] weekly payment of $125.00 shall continue until the accounts are paid in full, *or until further order."* 73 T.C. at 1114 (emphasis added).

Whether these payments are contingent depends in a large part on whether, under the laws of Ohio, the decree embodies a property settlement or an award for support and maintenance. The Tax Court found that the Ohio courts would view this agreement as a property settlement, 73 T.C. 1119, noting that the "divorce decree specified the items (and their amounts) that Clyde's payments to Betty were to cover." *Id.* at 1116. It found this conclusion reinforced by the fact that the Court of Common Pleas terminated the order when the taxpayer's payments equalled the sum of the accounts listed in the decree. *Id.* at 1117.

The taxpayer cites *Wolfe v. Wolfe,* 46 Ohio St.2d 399, 350 N.E.2d 413 (1976) for the proposition that the payments are part of a contingent support award. We agree with the Tax Court that *Wolfe* is not apposite. The Supreme Court of Ohio in that case held:

In summary, we hold, therefore, that where an alimony award is for support only, is for an indefinite amount, and where there is no property settlement, or such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(*a*) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(*b*) Such payments are in the nature of alimony or an allowance for support.

poses of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. *For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.*

**3.** Regulation § 1.71–1(d)(3) in relevant part is as follows:

(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement,

if there is such a settlement, the support award is independent thereof, the jurisdiction of the court to modify will be implied in the decree irrespective that such support order is based upon an agreement of the parties. 46 Ohio St.2d at 419, 350 N.E.2d at 416.

The *Wolfe* court further noted that "the decree is . . . not subject to modification if the alimony award is not solely for support but is in settlement of the property rights of the parties." 46 Ohio St.2d at 418, 350 N.E.2d at 425.

The *Wolfe* case does not stand for the proposition, as the taxpayer would seem to have it, that a court by retaining jurisdiction over a decree automatically converts it into a modifiable award for support instead of a property settlement. Where the express terms of the decree so clearly indicate that the award represents a division of marital property, more than the unadorned words "or until further order" are needed to show that it is an award for support and maintenance, modifiable for the contingencies set forth in the Regulation. This is especially true where, as in the present case, the Common Pleas Court had dismissed the wife's cross-complaint requesting support payments. By retaining the jurisdiction to oversee compliance with the decree, the court may have reserved to itself powers other than the power to modify it for the Regulation's contingencies. One such power for example, was the power exercised in this case to terminate the order after Clyde Crouser had paid the full amount into the court, even though his former wife had not applied all this money to the accounts, and the accounts were not "paid in full" as the decree had ordered.

Without more evidence and authority than have been presented here, we cannot agree with the taxpayer that this decree embodies a support award under Ohio law, modifiable for the contingencies of death, remarriage or change in economic circumstances of the parties. The payments are therefore not entitled to treatment as periodic payments, because they fail to meet the first of the Regulation's two requirements.

## II

■ Even if the decree were a modifiable award under Ohio law, the taxpayer would still have to meet the second of the Regulation's two tests: he must show that the "payments are in the nature of alimony or an allowance for support." 26 C.F.R. § 1.71–1(d)(3)(i)(*b*). The taxpayer fares even worse under this requirement than under the modifiability test, since here there is no need to inquire into the real or perceived intricacies of Ohio law. Whether the payments were made to satisfy an obligation of support or to satisfy property rights is a question of intent, and the determination of the Tax Court will not be set aside unless clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Lambros v. Commissioner*, 459 F.2d 69, 72 (6th Cir. 1972); *Porter v. Commissioner*, 388 F.2d 670, 671 (6th Cir. 1968).

■ As noted above, the terms of the decree clearly indicate that it embodies a division of property and not an allowance for support. The opening paragraphs first summarize the evidence and findings, dismiss the wife's cross complaint requesting an order of separate maintenance, and dissolve the marriage. The remainder of the decree is devoted entirely to allocating the marital property between two former spouses. The wife receives the property in West Virginia, the 1972 Chevrolet and all of the household goods and furnishings. The husband is ordered to make the payments in question. The wife is ordered to use this money to pay the specific accounts listed therein "to insure that the property heretofore awarded defendant shall be free and clear and that the debts on the same be paid." The husband then is awarded all other property. 73 T.C. at 1114–15. Furthermore, the decree makes no reference to death, remarriage or a change in economic circumstances, nor to any obligation of support or maintenance; payments are fixed at $125 per week with no express provision for modification; the incomes of the husband

and wife are not mentioned as factors in fixing the amount of the payments; the total amount and number of payments are fixed and readily determinable from the face of the agreement. As a matter of federal tax law, this evidence provides more than substantial support for the Tax Court's conclusion that "the intent manifested in the divorce decree was that the payments are not in the nature of support." 73 T.C. at 1121. The taxpayer has failed to show that the findings of fact of the Tax Court were clearly erroneous.

For these reasons and for the other reasons stated in its opinion, the decision of the Tax Court is AFFIRMED.