MARGARET B. GABLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gable v. Commissioner
Docket No. 31622-81.
United States Tax Court
T.C. Memo 1985-423; 1985 Tax Ct. Memo LEXIS 204; 50 T.C.M. (CCH) 764; T.C.M. (RIA) 85423; August 14, 1985. Neil R. Covert,Gregory G. Schultz, and Richard D. Green, for the petitioner. John S. Winkler, Lynn C. Washington, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1976
$1,236.59
1977
1,422.00
1978
1,465.00
We are presented with two issues for consideration: (1) whether a portion of monthly sums received by petitioner from her ex-husband are "fixed" by the terms of pertinent documents as child support in accordance with section 71(b) [1], and (2) whether an additional yearly payment by petitioner's ex-husband is includable in petitioner's income under *206 section 71(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Clearwater, Florida when she filed the petition in this case. She timely filed individual Federal income tax returns for each of the years in issue. In 1971, after 25 years of marriage, petitioner's husband filed for divorce in the state of Michigan. A decree for divorce was entered by the Circuit Court for the County of Washtenaw on January 11, 1972. The court judgment ratified and incorporated a written property settlement agreement previously entered into by the parties. Among other things, the court's judgment provided the following: ALIMONY AND SUPPORT PAYMENTS FOR MINOR CHILD
It is further ordered and adjudged that the * * * [husband] shall pay to * * * [petitioner] the sum of One Thousand ($1,000) Dollars per month, commencing as of January 1, 1972, subject to the provisions *207 set forth in the Property Settlement Agreement * * *. PROPERTY SETTLEMENT
It is further Ordered and Adjudged that the Property Settlement Agreement heretofore entered into by and between the parties hereto, be and the same is hereby ratified and confirmed and incorporated herein as a part of this Judgment. It is further Ordered and Adjudged that * * * [petitioner] shall pay to the cross-plaintiff the sum of $1.00 and upon payment of said sum, the * * * [petitioner] shall be forever barred from any dower interest in any property the * * * [husband] owns or in which he may have any interest, and such payment shall be in full satisfaction of all claims said * * * [petitioner] may have in any property presently owned or which may hereafter be acquired by the * * * [husband]. The Property Settlement Agreement provided in pertinent portion the following: PROPERTY SETTLEMENT
1. Husband shall receive, free and clear of any claims of Wife, the following property and, holding the Wife harmless, shall pay any indebtedness owing on such property except as otherwise specifically provided herein: (a) His personal belongings; (b) All of the real estate, money or *208 other property titled in his name or in his possession; (c) The yard equipment and tools of the parties. 2. Wife shall receive, free and clear of any claims of Husband, the following property and, holding the Husband harmless, shall pay any indebtedness owing on such property except as otherwise specifically provided herein: (a) Her personal belongings; (b) The personal belongings of the minor child of the parties; (c) The household furniture, furnishings and appliances of the parties; (d) Any funds, money or other property titled in her name or in her possession. 3. Husband shall purchase Wife a 1972 Pontiac LeMans. Wife shall allow her present car to be used as a trade-in on said automobile. 4. Husband shall pay to the Wife the sum of Sixty Six Thousand ($66,000.00) Dollars, payable in installments of Six Thousand ($6,000.00) Dollars per year, without interest, for a period of eleven (11) years. ALIMONY
Husband shall pay alimony to Wife, as follows: 1. One Thousand ($1,000.00) Dollars per month, commencing January 1, 1971, subject to the following: * * * (b) At such time as Cynthia Gable, the minor daughter of the parties, shall reach the age of *209 eighteen (18) years or dies, whichever event first occurs, said sum shall be reduced to Seven Hundred Fifty ($750.00) Dollars per month. (c) In the event Wife shall remarry prior to Cynthia's attaining the age of eighteen (18) years, said sum shall be immediately reduced to Two Hundred Fifty ($250.00) Dollars per month, which shall continue until Cynthia shall reach the age of eighteen (18) years or dies, whichever event first occurs, at which time payment of alimony shall immediately cease. (d) Upon Wife's death, or if she remarries after Cynthia attains the age of eighteen (18) years, alimony shall cease. 2. Husband shall furnish to Wife insurance on his life in the amount of Seventy Five Thousand ($75,000.00) Dollars, which shall be in full settlement of any and all alimony and other claims against his estate if he should predecease Wife. No schedule or balance sheet of the marital assets was prepared incident to the divorce. Petitioner's husband had placed title to the couple's home, to his law office, and to other real estate holdings in his name individually. Petitioner believed that her husband's net worth was between $200,000 and $300,000, when in reality his net *210 worth was in excess of $400,000 at the time of the divorce. During the period of negotiation preceding the divorce, petitioner and her husband agreed that she would be paid $750 per month as alimony, and that $250 per month would be paid as child support. They also agreed on a final figure of $66,000, which they characterized as a property settlement. Petitioner agreed to accept $6,000 per year for 11 years after her husband explained that he would be forced to sell some real estate holdings unless he could spread the payments over time. He paid the annual $6,000 in one lump sum, usually at the end of the year. It was petitioner's understanding that the $66,000 sum was paid in exchange for property and dower rights. Her husband, who was an attorney, intended for all sums he paid to be deductible by him as alimony. All amounts due under the agreement were timely paid. Petitioner received a total of $18,000 in 1976, $16,150 in 1977, and $15,000 in 1978. OPINION At issue is (1) whether a portion of the $1,000 monthly payments made pursuant to the paragraph in the divorce decree labeled "Alimony and Support Payments for Minor Child" is allocable to child support and thus not *211 includable in petitioner's income, and (2) whether the 11 yearly payments of $6,000 were in the nature of a property settlement rather than alimony. We shall address the latter issue first. During the years in issue, section 71(a) provided that payments to an ex-spouse made pursuant to a decree of divorce or a written separation agreement were includable in the recipient's gross income if they were periodic payments made because of the marital or family relationship. Section 71(a)(1), (2). [2] The issue in the instant case is whether the $6,000 payments, clearly "periodic" under section 71(c)(2), were made "because of the marital or family relationship" within the meaning of section 71(a)(1) and (2), or were in the nature of a property settlement. In the latter case, they are not subject to the provisions of section 71. Griffith v. Commissioner,749 F.2d 11 (6th Cir. 1984), affirming a Memorandum Opinion of this Court; Yoakum v. Commissioner,82 T.C. 128, 134 (1984); Thompson v. Commissioner,50 T.C. 522 (1968). *212 Petitioner argues that her support needs were met by the $1,000 monthly payments, and that the additional $6,000 per year was paid to effect a division of the marital property. Respondent argues that the payments were made as part of the husband's general support obligations. The facts in the record clearly support petitioner's position. In two recent cases, this Court recited lists of factors relevant to determining whether payments related to a division of property rather than support. Benedict v. Commissioner,82 T.C. 573, 577 (1984); Yoakum v. Commissioner,supra at 140. Among the factors listed as being indicative of property settlement payments were the following: (1) the presence of a fixed sum, (2) the fact that payments were not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinquished property rights in return for the payments, (5) the fact that the husband's obligation to make the payments is secured, (6) the fact that the parties intended the payments to effect a division of their assets, (7) the fact that the amount of payments *213 plus the other property awarded equals approximately one-half of the property accumulated by the parties during the marriage, (8) the fact that the need of the recipient was not taken into consideration in determining the amount of the payments, and (9) the fact that a separate provision for support was provided elsewhere in the decree or agreement. A consideration of these factors convinces us that the $6,000 annual payments were in the nature of a property settlement. First, the total sum to be paid was fixed at $66,000. Second, the total amount due did not relate to the husband's income; indeed, he testified that he paid each annual payment in a lump sum because he was not certain that his law practice would yield sufficient steady income to pay on a monthly basis. Third, unlike the payments made pursuant to the paragraph labeled "Alimony", the payments labeled by both parties as "Property Settlement" were not to terminate upon petitioner's death or remarriage. Fourth, it appears that petitioner relinquished her rights to marital property in exchange for the payments. Pursuant to the divorce decree, petitioner surrendered her dower rights, Mich. Comp. Laws sec. 558.1 *214 (Mich. Stat. Ann. sec. 26.221 (Callaghan 1974)), which, under michign law, must be fully satisfied upon divorce by the inclusion of a relevant provision in the decree. As we have found previously, see Schatz v. Commissioner,T.C. Memo. 1981-341, we find that the payment of $1.00 in satisfaction of petitioner's dower rights was merely perfunctory, and that petitioner actually surrendered a valuable right upon divorce. Fifth, the husband's obligation to make the payments was secured by an insurance provision described in the Property Settlement Agreement. In addition, we found petitioner's testimony to be credible, and thus believe her statement that in negotiating for the $66,000 sum she intended for it to represent her interest in the marital estate. We believe her husband's intent is demonstrated by a notation on one of his checks for $6,000 which states "final payment--property settlement" and by a letter he drafted stating that he was obliged to pay $6,000 per year for 11 years "in lieu of further property settlement." That he may have desired favorable tax treatment does not negate his true conception of the nature of these payments. The seventh factor listed *215 above is not satisfied, but we think this is due more to the parties' unequal bargaining positions than to anything else. According to the ex-husband's statement of his personal net worth at trial, the sum of $66,000 represented about one-sixth, rather than one half, of the marital property. What is more, since no interest was added to the base sum to account for the 11-year payment period, the present value of the $66,000 sum was actually far less at the time of the agreement. From petitioner's testimony at trial, however, it appears that she believed that she had no interest in property to which her husband alone acquired title during the marriage. In addition, she appears to have been informed that the property was worth only one-half of its actual value. Under these circumstances, the lack of an equal property division does not indicate that the payments were truly in the nature of alimony. That petitioner may have entered into an unfair property settlement does not change the nature of the payments she did receive. See Slawski v. United States,6 Cl. Ct. 433 (1984). Several facts indicate that the $6,000 annual payments were not based upon petitioner's support *216 needs. First, they were paid in one lump sum, close to the end of each year. If petitioner had needed these payments as general support, she probably would have needed to receive fractional sums more frequently. In addition, we believe petitioner's testimony that, at the time of the agreement, $1,000 per month was adequate for the support of she and her daughter. Finally, the presence of a separate provision in the agreement for petitioner's support indicates that the paragraph labels in the agreement and decree accurately described their contents. On this issue we find for petitioner. The second issue for consideration is whether, of the $1,000 monthly support payments, $250 was "fixed" as child support. If the payments were fixed as child support, they are not includable in petitioner's income under section 71(a). Section 71(b). [3]
In Commissioner v. Lester,366 U.S. 299 (1961), *217 the Supreme Court concluded that a separation agreement did not sufficiently "fix" payments as child support even though it provided that periodic payments to the wife were to be reduced by one-sixth when each of the three children married, became emancipated, or died: The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that a "sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of Congress. [Commissioner v. Lester,supra at 303.] We note that respondent bears the burden of proof on this issue because it was raised for the first time in an amended answer. Rule 142(a). The issue, nevertheless, is determined by Commissioner v. Lester since the few facts essential to the holding in Lester are clearly *218 established in the case before us. The Supreme Court looked only to the language in the agreement and refused to consider extrinsic evidence of the parties' intent. 366 U.S. at 305. Under these circumstances, the burden of proof is irrelevant. Since the agreement in the instant case did not state, but merely implied, that $750 was intended as support for the wife, and $250 was intended as support for the child, we are required by Commissioner v. Lester to hold that no amount was fixed as child support. See also Mass v. Commissioner,81 T.C. 112 (1983). The Supreme Court in Lester based its rather literal approach on legislative intent, which it described, in part, as follows: In addition, Congress realized that the "increased surtax rates would intensify" the hardship on the husband who, in many cases, "would not have sufficient income left after paying alimony to meet his income tax obligations," H.R. Rep. No. 2333, 77th Cong., 2d Sess. 46, and perhaps also that, on the other hand, the wife, generally being in a lower income tax bracket than the husband, could more easily protect herself in the agreement and in the final analysis receive *219 a larger net payment from the husband if he could deduct the gross payment from his income. [Commissioner v. Lester,supra at 301-302 (Fn. ref. omitted).] We expect that this rationale is of small comfort to spouses like petitioner, who failed to bargain for higher payments because they were unaware of the lurking tax consequences. For divorce or separation agreements executed after 1984 [4], Congress has overruled the Lester case by providing that the amount by which support is reduced upon contingencies involving a child will now be treated as "fixed." Section 71(c), as amended by section 422(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 795. Petitioner's circumstances are not covered by the new Act, however, and we therefore must hold for respondent on this issue. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. The text of sec. 71(a) provided as follows: (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) WRITTEN SEPARATION AGREEMENT.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) DECREE FOR SUPPORT.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.↩
3. Sec. 71(b) provides that section 71(a) does not apply to "that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband."↩
4. The changes also apply to divorce or separation instruments executed before January 1, 1985, but modified on or after that date if the modification expressly provides that the amendments to sec. 71 shall apply to such modification. Tax Reform Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 795.↩