T.C. Summary Opinion 2006-82

UNITED STATES TAX COURT

MARK E. PICOU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10879-05S, 24363-05S.     Filed May 22, 2006.

Mark E. Picou, pro se.

<u>Michael W. Bitner</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petitions were filed.[1]  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2002 and 2003, the taxable years in issue.  All monetary amounts are rounded.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 2002 and 2003 of $2,441 and $2,740, respectively.

After petitioner's concession,[2] the issue for decision is whether mortgage payments made by petitioner in 2002 and 2003 in respect of the former marital residence in which petitioner's former wife retained no possessory or equitable interest are deductible as alimony. We hold that they are not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petitions were filed, petitioner resided in Ste. Genevieve, Missouri.

Petitioner and his former wife, Terri Picou (Ms. Picou), married in May 1989. During their marriage, petitioner built the marital home at 13221 Lakewood Drive (Lakewood home). Petitioner

---

[2] Petitioner concedes that the amounts deducted as alimony were overstated. For 2002, the amount deducted as alimony included home mortgage interest of $6,061, which he also deducted on Schedule A, Itemized Deductions, of his 2002 return. Similarly for 2003, the amount deducted as alimony included home mortgage interest of $3,896, which he also deducted on Schedule A of his 2003 return. The parties did not address whether the amounts that petitioner claimed as alimony also included real estate taxes that he deducted on Schedule A in the amount of $911 and $846 for 2002 and 2003, respectively. See Zampini v. Commissioner, T.C. Memo. 1991-395. In any event, respondent did not disallow any deductions claimed by petitioner on either Schedule A.

and Ms. Picou financed the construction of the Lakewood home with funds from petitioner's separate personal property and a first and second mortgage from Union Planters Bank. Petitioner and Ms. Picou were both liable as coborrowers for the mortgages, and both parties were named as joint owners on the title deed.

On May 1, 1997, petitioner and Ms. Picou separated, at which time Ms. Picou permanently moved out of the Lakewood home. At all relevant times, petitioner has continued to reside in the Lakewood home.

On May 21, 1998, petitioner and Ms. Picou were divorced pursuant to a Judgment And Decree of Dissolution of Marriage (divorce decree) entered by the Circuit Court of Sainte Genevieve County of Missouri. The divorce decree directed, in pertinent part, as follows:

8. Maintenance is denied to each party

9. Petitioner [Mark E. Picou] is awarded the following marital property:
 A. House at 13221 Lakewood Drive, Ste. Genevieve, MO;

\* \* \* \* \* \* \*

11. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioner shall pay the following debts and obligations of the marriage and that the sums to be paid by Petitioner are <u>in the nature of support to Respondent</u> [Ms. Picou] and that same shall be non-dischargeable in any action for bankruptcy which Petitioner may file:
 A. First mortgage on house at 13221 Lakewood Drive, Ste. Genevieve, MO, in the amount of $83,000.00;
 B. Second mortgage on house at 13221 Lakewood Drive, Ste. Genevieve, MO, in the amount of $14,500.00
 \* \* \* [Emphasis added.]

The purpose of paragraph 11 was to protect Ms. Picou "from any bad debt"; in particular, to protect Ms. Picou from sole personal liability in the event that petitioner filed for bankruptcy and Union Planters Bank sought recourse against her for the Lakewood home mortgages. There was no subsequent modification to the divorce decree.

As part of the divorce action, Ms. Picou delivered to petitioner a quitclaim deed conveying all of her right, title, or interest in and to the Lakewood home.

In July 1999, petitioner filed for bankruptcy under chapter 13 of the Bankruptcy Code and received a discharge in July 2004. As part of the bankruptcy plan, the bankruptcy trustee garnished petitioner's wages and used the funds to pay petitioner's debts, including the mortgage payments to Union Planters Bank. The bankruptcy trustee made mortgage payments of $13,176 and $11,780 in 2002 and 2003, respectively, to Union Planters Bank on behalf of petitioner.[3]

In October 2005, petitioner refinanced the first and second mortgages held by Union Planters Bank with another financial institution, and he became the only borrower listed on the new mortgage for the Lakewood home. The refinance extinguished any

---

[3] Respondent does not dispute that the payments made by the bankruptcy trustee constituted payments made by petitioner.

continuing personal liability that Ms. Picou might have had in respect to the Lakewood home.

Petitioner timely filed Federal income tax returns for 2002 and 2003. On each return, petitioner claimed a deduction for alimony payments to Ms. Picou in the amount of $14,448.[4] On the Schedules A, Itemized Deductions, attached to his 2002 and 2003 returns, petitioner deducted home mortgage interest in the amounts of $6,061 and $3,896, respectively. For both years, the amounts claimed as a deduction for alimony payments included the amounts claimed as home mortgage interest. See supra note 2.

In the notices of deficiency, respondent disallowed petitioner's claimed alimony deductions. In the notice of deficiency for the taxable year 2002, respondent determined that petitioner

> cannot take a [alimony] deduction if you are the
> occupant of the home in which you state you are paying
> the mortgage payments. Records show you also took the
> mortgage interest on your Schedule A for the same home.
> You cannot take the deduction twice. Your decree on
> page 6 paragraph 8 states maintenance is denied by each
> party. Page 7 paragraph 11 states that you are to pay
> the following debts & obligations that [are] in the
> nature of support, not Alimony.

---

[4] There is no explanation in the record for the discrepancy between the amounts petitioner deducted as alimony on his returns and the total mortgage payments made by Union Planters Bank of $13,176 and $11,780 for 2002 and 2003, respectively.

In the notice of deficiency for the taxable year 2003, respondent determined that petitioner "did not establish that the amount shown was (a) alimony and (b) paid".

## Discussion[5]

Section 215(a) allows a deduction for alimony payments paid during the payor's taxable year.  Section 215(b) defines alimony as payment which is includable in the gross income of the recipient under section 71.  Section 71(b) provides a four-step inquiry for determining whether a cash payment is alimony. Section 71(b) provides:

> SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance,

---

[5]  We need not decide whether sec. 7491, concerning burden of proof, applies in this case because petitioner did not allege that sec. 7491 was applicable, and the issue is essentially legal in nature.  See Higbee v. Commissioner, 116 T.C. 438 (2001).

> the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Petitioner contends that the mortgage payments were alimony because the divorce decree specifically called the payments "support". Respondent, on the other hand, contends that the payments were for personal living expenses; that is, mortgage payments on petitioner's personal residence, which was awarded to him pursuant to the divorce decree. The resolution of this issue therefore turns on whether the mortgage payments constituted alimony or a property settlement.

We observe that in deciding the character of an award in a divorce or separation decree, we give great weight to the language and structure of the decree. Griffith v. Commissioner, 749 F.2d 11, 13 (6th Cir. 1984), affg. T.C. Memo. 1983-278. Whether payments represent support or a property settlement, however, is not controlled by the labels assigned to the payments by the court in the divorce decree. Beard v. Commissioner, 77 T.C. 1275, 1283-1284 (1981), and cases cited therein. The determination depends upon all of the surrounding facts and

circumstances.  <u>Yoakum v. Commissioner</u>, 82 T.C. 128, 140 (1984); <u>Beard v. Commissioner</u>, <u>supra</u> at 1284.  Finally, it is well settled that State courts by their decisions cannot determine issues of Federal tax law.  See <u>Commissioner v. Tower</u>, 327 U.S. 280 (1946); <u>Neal v. Commissioner</u>, T.C. Memo. 1999-97; <u>Nieto v. Commissioner</u>, T.C. Memo. 1992-296.

Although paragraph 11 of the divorce decree labeled the mortgage payments "in the nature of support", paragraph 8 specifically stated that "Maintenance is denied to each party". It thus appears that the mortgage payments are not alimony or separate maintenance payments.  Petitioner admitted that the intent and purpose of paragraph 11 was to protect Ms. Picou from becoming personally liable for the mortgages in the event that he filed for bankruptcy.  Clearly, Ms. Picou had no interest in the Lakewood home after the divorce:  she relinquished her interest in the Lakewood home by quitclaim deed as part of the divorce action in exchange for the guarantee that petitioner would pay the mortgages and expeditiously refinance the mortgages in his name alone to extinguish any continuing personal liability that she might have on the mortgages.  Under these circumstances, the provision in respect to the mortgage payments appears to be more in the nature of a property settlement.

In any event, we are not persuaded that the mortgage payments conferred a benefit on Ms. Picou by virtue of relieving

her of her obligation to pay her one-half of the mortgage because of the fact that petitioner was the sole owner and the sole occupant of the Lakewood home.  In Taylor v. Commissioner, 45 T.C. 120, 123 (1965), former husband and wife jointly owned the marital property, and both were personally liable on the mortgage loan.  Pursuant to their divorce decree, the wife was entitled to reside in the marital home, and the husband was directed to make the mortgage payments.  The husband then deducted the mortgage payments as alimony.  The Court held that he was entitled to claim one-half of the mortgage payment as an alimony deduction because each payment pro tanto discharged the wife's legal obligation to the lender and relieved her of her obligation to contribute.  Unlike the taxpayer in Taylor, however, petitioner in the instant cases was the sole owner and the sole occupant of the Lakewood home pursuant to the divorce action.  Although petitioner's payment of the mortgage may have relieved Ms. Picou from her one-half legal obligation to the lender, it did not confer any direct economic benefit to Ms. Picou because she was no longer an owner or resident of the Lakewood home by virtue of the divorce decree.  See Leventhal v. Commissioner, T.C. Memo. 2000-92 (holding that the taxpayer was entitled to an alimony deduction for one-half of the mortgage payments on the marital home that was solely owned by the former wife in which the parties equally split residency of the marital home until it was

sold).  Indeed, the payments served only to increase the value of the Lakewood home, which benefit inured exclusively to petitioner as the sole owner.  See <u>Stiles v. Commissioner</u>, T.C. Memo. 1981-711.

Under the facts and circumstances of this case, we conclude that the mortgage payments do not constitute alimony.  Accordingly, we sustain respondent's determination.

<u>Conclusion</u>

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue, as well as petitioner's concession, see <u>supra</u> note 2,

<u>Decisions will be entered</u>

<u>for respondent.</u>